UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | |
|---|---|
| PLAINTIFF<br>    Meredith McKelvey,<br><br>v.<br><br>DEFENDANT<br>    Louis DeJoy. | :<br>:<br>:   No. 3:20-CV-1591 (VLB)<br>:<br>:<br>:   June 28, 2022<br>:<br>:<br>:<br>:<br>: |

## RULING ON MOTION TO COMPEL DISCOVERY (DKT. 22)

**Before the Court is Plaintiff's Motion to Compel Discovery. Plaintiff Meredith McKelvey ("Plaintiff" or "McKelvey"), a United States Postal Service (USPS) employee sues her employer, Louis DeJoy in his capacity as USPS Postmaster General ("Defendant" or "USPS"), for employment discrimination. Specifically, Ms. McKelvey alleges USPS created a hostile work environment and disparately treated her on the basis of her age and race, in violation of Title VII of the Civil Rights Act of 1964 ("Title VII"), 42 U.S.C. §§ 2000e–2000e-17, the Age Discrimination in Employment Act of 1967 ("ADEA"), 29 U.S.C. §§ 621–634. (Dkt. 1 (Compl.) ¶¶ 2, 17, 18.) In this Motion to Compel, Plaintiff seeks two types of evidence: (1) statements and notes created by the purported bad actor, Robert Peluse, and (2) a video recording that she believes documents an incident central to this case. For the foregoing reasons, Plaintiff's Motion to Compel is DENIED.**

1

I.  **Background**

The relevant facts of this case begin with an incident on May 5, 2020, in which Robert Peluse, Lead Manager of Distribution Operations at the USPS Processing & Distribution Center in Hartford, Connecticut, ordered Plaintiff to perform a task outside the scope of her job responsibilities (the "Incident").[1]  Plaintiff refused to perform these tasks, and Mr. Peluse responded "in a sharp and loud voice" with "highly agitated and aggressive body language," causing Plaintiff to feel "extremely intimidated and threatened" (Dkt. 1 (Compl.) ¶¶ 6–9.)

Following the Incident, Plaintiff filed an administrative complaint with the USPS Equal Employment Opportunity ("EEO") Office.  *Id.* ¶¶ 14–16.  On September 18, 2020, the USPS EEO Office dismissed Plaintiff's formal complaint of discrimination and issued a right to sue letter. [2]  (*See* Dkt. 1-1 (Compl. Ex. A) at 1; Dkt. 22-1 (Pl.'s Mot. Compel Mem. Law.) at 2.)

On October 22, 2020, Plaintiff filed a complaint in the District of Connecticut, alleging hostile work environment and disparate treatment discrimination on the basis of race and color in violation of Title VII, 42 U.S.C. §§ 2000e–2000e-17, and on the basis of age, in violation of the ADEA, 29 U.S.C. §§ 621–634.  (*See* Dkt. 1 ¶¶ 2, 17, 18.)  The Court issued a Scheduling Order setting the close of discovery on

---

[1] The following facts are taken from the operative Complaint and, for the purposes of this Motion to Compel, presumed to be true.

[2] USPS is subject to Title 29 Code of Federal Regulations Part 1614, which requires federal agencies, like USPS, to "adopt [internal] procedures for processing individual and class complaints of discrimination as its own exhaustion of remedies process. *See* 29 C.F.R. § 1614.103(b)(3); 29 C.F.R. § 1614.104(a) (2022).  The parties do not dispute that Ms. McKelvey exhausted her remedies through this process.  (*See* Dkt. 1 ¶¶ 14-16; Dkt. 12 (Ans.) ¶¶ 14-16.)

October 1, 2021. (*See* Dkt. 15 (Scheduling Order).)

Plaintiff noticed Mr. Peluse's deposition on July 14, 2021, but it was rescheduled four times due to scheduling conflicts. The deposition ultimately took place September 24, 2021, one week before the discovery deadline. (Dkts. 22-1 at 2; 22-2 (Pl.'s Mot. Compel Ex. 1).) During his deposition, Mr. Peluse testified about the two pieces of evidence that are the subject of this dispute.

First, Mr. Peluse testified about a statement he wrote regarding the following:

> [W]hen I was first notified of a complaint, I had one statement that I sent, and I cannot recall right now who it was that asked me to mail it to them. It was someone from the post office. When they get a complaint, they ask me to write a statement…. It was, more or less, just my recollection of what happened on that day, and I believe I made reference to a couple of maybe [pre-disciplinary interviews] that Meredith had just prior to this incident.

(Dkt. 22-3 (Peluse Dep.) at 49:12-50:25.) Mr. Peluse testified that he gave it to a "postal person," and he "assumed it was a postal lawyer" or "the EEO representative for the post office." (*Id.*) Mr. Peluse also testified he sent this document on or around November 2020. (*Id.*)

Second, Mr. Peluse testified that the location of the Incident was under video surveillance and that "it would have been recorded." (*Id.* at 78:17–19.) Mr. Peluse testified that "the inspection service" controls storage of the video recordings but he did not know who was in charge of this group. (*Id.* at 79:8-80:5.) Mr. Peluse also testified that he did not know how long the recordings were stored, but he did know "they don't store it indefinitely." (*Id.*)

Plaintiff's counsel stated on the record that it did not have Mr. Peluse's statement or the video recording. (*See id.* at 51:7–8, 79:4–7.) As part of the Notices

3

of Deposition, Plaintiff requested Mr. Peluse bring "copies of any notes, memorandums, statements and/or other documents you have received, reviewed or prepared in connection with the incident at the Registry Cage involving yourself and the plaintiff on or about May 5, 2020." (Dkt. 22-2 at 4, 8, 12–13, 16–17, 20–21.) Plaintiff's counsel thereafter requested production of those materials before the discovery deadline. (Dkt. 22-3 at 51:22–25, 80:6–11; Dkt. 22-1 at 3–4.) Defendant did not produce the requested materials.

On September 30, 2021, Plaintiff's counsel filed a Motion for Extension of Time, requesting a 30-day discovery deadline extension until October 31, 2021. (Dkt. 19 (Pl.'s Mot. for Enlargement of Time.) The Court granted the Motion in the interest of fairness to the parties. (Dkt. 20 (Order) (citing D. Conn. L. Civ. R. 7(b)).)

During the extended discovery period, the parties attempted to resolve the disputes, but they were unsuccessful. On October 14 and 18, 2021, USPS objected to producing a) Mr. Peluse's statement on the grounds that it "calls for disclosure of attorney work product, mental impressions, trial strategy, and information protected by attorney client privilege;" and b) the video recording on the grounds "video recordings of the registry cage from May 2020 can no longer be accessed." (Dkt. 22-2 at Ex. 3; Dkt. 23-3 (Opp'n Ex. 3, Def. Ltr.) at Bates 28–29.)

On October 22, 2021, Plaintiff filed a Motion to Compel Discovery, seeking production of Mr. Peluse's statement and the video recording. (Dkt. 22 (Pl.'s Mot. to Compel).) Defendant timely opposed, objecting against producing Mr. Peluse's statement on the grounds that it constitutes protected work product and objecting

against producing the video recording on the grounds that it no longer exists due to USPS's limited retention policy. (Dkt. 22-3 at 8–11.)

## II.  Legal Standard

When a party fails to produce documents that have been requested during discovery, "[the] party seeking discovery may move for an order compelling . . . production." Fed. R. Civ. P. 37(a)(3)(B)(iv).  Under the District of Connecticut Local Civil Rule 37(a), before the party seeking discovery moves, the parties must confer in an attempt "to arrive at a mutually satisfactory resolution" of the discovery dispute. D. Conn. Loc. R. Civ. P. 37(a).  If the parties cannot arrive at a resolution and the party seeking discovery moves, the party resisting discovery has the burden of showing why discovery should be denied. *See Cole v. Towers Perrin Forster & Crosby*, 256 F.R.D. 79, 80 (D. Conn. Feb. 9, 2009); *El-Massri v. New Haven Corr. Ctr.*, 2019 WL 4942082, at *2 (D. Conn. Oct. 8, 2019); *Davis v. Hunt Leibert Jacobson P.C.*, 2016 WL 3349629, at *3 (D. Conn. June 10, 2016) ("The burden is on the party claiming the protection of a privilege to establish those facts that are essential elements of the privileged relationship.") (citation omitted).

A party may "withhold[] information otherwise discoverable" if that information is "privileged or subject to protection as trial-preparation material." Fed. R. Civ. P. 26(b)(5)(A). When a party withholds information otherwise discoverable by asserting privilege or work product protection, "the party must: (i) expressly make the claim; and (ii) describe the nature of the documents, communications, or tangible things not produced or disclosed—and do so in a

manner that, without revealing information itself privileged or protected, will enable other parties to assess the claim." *Id.*; *see also* D. Conn. Loc. R. Civ. P. 26(e).

### III. Discussion

Plaintiff moves to compel Mr. Peluse's statement and the video recording of the Incident. Defendant timely opposed.[3] The Court addresses each discovery dispute in turn.

#### A. Robert Peluse's Statement

Plaintiff seeks a written statement that Mr. Peluse testified he made to either a USPS lawyer or an EEO Investigator. As a brief background of the discovery dispute, Mr. Peluse testified to the following: "I gave [the statement] to the postal [] person. I assumed it was a postal lawyer, but it may not have been. It may have been the EEO representative for the Post Office." (Dkt. 22-3 at 50:21–24.) After the deposition, defense counsel clarified that Mr. Peluse created this statement for the USPS Law Department in response to "a standard inquiry" regarding this lawsuit, not in response to an Equal Employment Opportunity Investigator. (Dkt. 23-3 at Bates 28–29.) Defense counsel objected against producing Mr. Peluse's statement on the grounds of "attorney work product, mental impressions, trial strategy, and information protected by the attorney client privilege." (*Id.* at Bates 29.)

---

[3] Plaintiff's motion to compel includes Mr. Peluse's statements and notes he took during the interview. Plaintiff stated that Mr. Peluse testified about participating in pre-disciplinary interviews ("PDI"). (Dkt. 22-1 at 5.) USPS contends that it has produced all PDI information and—to the extent the PDI information are relevant notes—that this issue is moot. Because Plaintiff does not challenge USPS' position, the Court finds the PDI notes issue is moot. *See Stinson v. City of New York*, 2015 WL 4610422, at *3 (S.D.N.Y. July 23, 2015) ("Where the party responding to the motion agrees to provide the discovery requested, a motion to compel becomes moot.")

6

In the Motion to Compel, Plaintiff argues Mr. Peluse's statements are discoverable because the attorney-client privilege does not apply for two reasons. First, the attorney-client privilege may not apply if the statements were used "to contemplate the plaintiff's discipline." (Dkt. 22-1 at 6.) Second, if Mr. Peluse's statements were made to an EEO Investigator, the attorney-client privilege may be impliedly waived. (*See id.*)

In its opposition, Defendant clarifies that Mr. Peluse's statement is protected by the work product doctrine, not the attorney client privilege.[4] According to Defendant, the reason why the work product doctrine protects Mr. Peluse's statement is because it "was wholly prepared after the filing of the Plaintiff's Complaint in Federal District Court, for the purpose of assisting the USPS [L]aw [D]epartment in its defense in the instant litigation." (Dkt. 23 at 5–6.)

Plaintiff did not file a Reply. Although Plaintiff's failure to reply could be construed as a concession that the work product doctrine prevents disclosure, this Court will nonetheless address whether Defendant has satisfied its burden to show the statement should not be produced.

Under the protection of the work product doctrine, a party may "withhold[] information otherwise discoverable" if that information is "subject to protection as trial-preparation material." Fed. R. Civ. P. 26(b)(5)(A). Trial-preparation materials include "documents and tangible things that are prepared in anticipation of

---

[4] Because Defendant concedes the attorney-client privilege does not apply, the Court will not address it in this decision.

litigation or for trial by or for another party or its representative," including the other party's attorney or agent. Fed. R. Civ. P. 26(b)(3)(A).

### 1. Mr. Peluse's Statement Was Prepared "In Anticipation of Litigation or for Trial."

The Second Circuit's test to determine whether a document is prepared "in anticipation of litigation" originates with *United States v. Adlman*, 134 F.3d 1194 (2d Cir. 1998). *See Schaeffler v. United States*, 806 F.3d 34, 43 (2d Cir. 2015) ("*Adlman* is the governing precedent."). The *Adlman* Court adopted Wright & Miller's "anticipation of litigation" test: a document is prepared "in anticipation of litigation" if, "'in light of the nature of the document and the factual situation in the particular case, the document can fairly be said to have been prepared or obtained *because of* the prospect of litigation.'" *Adlman*, 134 F.3d at 1202 (quoting Charles Alan Wright, Arthur R. Miller, and Richard L. Marcus, 8 Federal Practice & Procedure § 2024, at 343 (1994)) (emphasis in original)). The limited exception to this standard is when a document is prepared in the "ordinary course of business or that would have been created in essentially similar form irrespective of the litigation." *Id.*

The Court finds that Mr. Peluse's statement was prepared "in anticipation of litigation." Ms. McKelvey filed this lawsuit on October 22, 2020. (Dkt. 1.) As explained in USPS' privilege log, on November 20, 2020, Paralegal Taylor e-mailed Mr. Peluse a copy of Plaintiff's complaint, requesting his records of the Incident and informing him that Postal Attorney Merritt and Assistant United States Attorney Green were preparing a defense in the instant litigation. (*See* Dkt. 23-6 (Opp'n Ex. 6, Priv. Log) at Bates 38.) Paralegal Taylor followed up with Mr. Peluse

8

on November 30, 2020, reminding him to send his records of the Incident. (*Id.*)  Mr. Peluse responded to Paralegal Taylor on December 3, 2020, attaching a Microsoft Word document with his statement. (*Id.*)  Mr. Peluse testified, "When [USPS] get[s] a complaint, they ask me to write a statement…. It was, more or less, just my recollection of what happened on that day, and I believe I made reference to a couple of maybe [pre-disciplinary interviews] that Meredith had just prior to this incident."  (Dkt. 22-3 at 49:12-50:25.)  The Microsoft Word document's metadata indicated that it was created <u>that day</u>—about six weeks after Plaintiff filed a complaint in this Court. (Dkt. 23-6 at Bates 38.)  Ms. McKelvey does not provide any evidence showing that the document was <u>not</u> created on December 3, 2020.

The Court also finds that the "ordinary course of business" exception does not apply.  Mr. McKelvey has not provided any evidence that Mr. Peluse's statements would have been prepared in the "ordinary course of business or that would have been created in essentially similar form irrespective of the litigation." *Adlman*, 134 F.3d at 1202. In fact, Mr. Peluse testified that he typically received requests for statements only "[w]hen they get a complaint."  (Dkt. 22-3 at 49:12-50:25.)  Because the litigation had already begun, Mr. Peluse created the statement upon notification of the complaint, and there is no evidence supporting a finding that the document was created "in the ordinary course of business," Mr. Peluse's statements were created "in anticipation of litigation."

        2.    <u>Although Robert Peluse's Statement was Not Prepared by an Attorney, it is Nonetheless Subject to the Work Product Doctrine.</u>

The work product doctrine extends to protect materials that are <u>not</u> prepared by or for an attorney.  Federal Rule 26 specifies that the work product doctrine

**9**

applies to documents prepared "by or for another party or its <u>representative</u>," specifically enumerating a party's agent.  Fed. R. Civ. P. 26(b)(3)(A) (emphasis added).  As the United States District Court for the Southern District of New York has explained,

> The text of Fed. R. Civ. P. 26(b)(3)(A) accords the protection to material prepared "by or for [a] party or its representative"—not merely material prepared by or for an attorney. The Advisory Committee Notes confirm that the intention of the Rule was to protect material prepared by non-attorneys[,] [and], all cases of which the Court is aware that have specifically addressed this question afford protection to materials gathered by non-attorneys even where there was no involvement by an attorney.

*Wultz v. Bank of China Ltd.*, 304 F.R.D. 384, 394 (S.D.N.Y. Jan. 21, 2015) (citation omitted); *see also Parneros v. Barnes & Noble, Inc.*, 332 F.R.D. 482, 492 (S.D.N.Y. Oct. 4, 2019) (adopting *Wultz* reasoning); *Tower 570 Co. v. Affiliated FM Ins. Co.*, 2021 WL 1222438, at *2–3 (S.D.N.Y. Apr. 1, 2021) (same).

Here, Mr. Peluse's statement was made in response to the USPS Law Department's "standard inquiry" for litigation defense. (Dkt. 23-3 at Bates 28–29.) Although Mr. Peluse (i.e., a USPS representative but not an attorney) wrote the statement, he did so for the purpose of giving it to the USPS Law Department and discovery related to Ms. McKelvey's case. (*See* Dkt. 23-6 at Bates 38; Dkt. 22-3 at 49:12-50:25.)

For these reasons, the Court finds Mr. Peluse's statement is protected by the work product doctrine and shall not be produced.

### B. Video Recording of the Incident

The second document Plaintiff seeks is a video recording of the Incident, but it is undisputed that the video recording was destroyed. Accordingly, Plaintiff argues that Defendant may have intentionally spoliated the video and that Defendant violated its duty to preserve the video for use as evidence in reasonably foreseeable litigation. (Dkt. 22-1 at 6–8.)

Defendant responds that it did not intentionally spoliate the video and that it did not violate its duty to preserve the evidence. Defendant argues that it deleted the video in accordance with its internal policies and procedures and that it did so before Plaintiff even started the USPS Equal Employment Opportunity Office administrative process. (Dkt. 23 at 11.) Defendant cites USPS Administrative Support Manual § 273.173, which only requires USPS to retain video recordings for 32 days. (*See* Dkt. 23-7 (Opp'n Ex. 7, Betournay Decl.) ¶ 3.)

The Second Circuit defines spoliation as "the destruction or significant alteration of evidence, or the failure to preserve property for another's use as evidence in pending or reasonably foreseeable litigation." *West v. Goodyear Tire & Rubber Co.*, 167 F.3d 776, 779 (2d Cir. 1999); *see United States v. Walker*, 974 F.3d 193, 208 (2d Cir. 2020). When it comes to failing to preserve evidence, the duty to preserve arises "when the party has notice that the evidence is relevant to litigation or when a party should have known that the evidence may be relevant to future litigation." *Fujitsu Ltd. v. Fed. Express Corp.*, 247 F.3d 423, 436 (2d Cir. 2001); *Bagley v. Yale Univ.*, 318 F.R.D. 234, 241 (D. Conn. 2016) (reasoning that e-mails documenting that the plaintiff "threaten[ed] legal action," which were sent around

11

eleven months before the defendant issued its first litigation hold notices, suggested that a future lawsuit might occur). In the end of the day, spoliation must be intentional, i.e. taken in bad faith. *See Walker*, 974 F.3d at 208; *Bagley*, 318 F.R.D. at 237 (stating that Rule 37 "provides that an adverse inference is warranted only when the court finds that a spoliating party acted with the intent to deprive another party of the information's use in the litigation.") (internal quotation marks omitted).

The Court finds that USPS' failure to preserve the video recording does not amount to spoliation. As an initial matter, evidence establishes that the video recording was destroyed before litigation was "reasonably foreseeable." The individual responsible for maintaining video recordings, Alan Betournay (Manager of Maintenance Operations at the Hartford Processing and Distribution Center), submitted an affidavit that the video recording was deleted in accordance with USPS Administrative Support Manual § 273.173, which only requires USPS to retain video recordings for only 32 days. (Dkt. 23-7 ¶¶ 1-3.) Because the Incident took place on May 5, 2020, USPS was not required to retain the video beyond June 7, 2020. (*Id.* ¶ 4.) When Ms. McKelvey filed her initial EEO complaint on June 24, 2020, the video was no longer available. (*Id.*) Accordingly, USPS could not have foreseen litigation at the time when the video recording was deleted.

As a secondary matter, there is no evidence to suggest that the destruction of the video recording was intentional to prevent Ms. McKelvey from using the evidence during litigation. *See West*, 167 F.3d at 779; *Bagley*, 318 F.R.D. at 236–37. Accordingly, sanctions are not warranted here.

IV.     **Conclusion**

**Accordingly, Plaintiff's Motion to Compel Discovery is DENIED.**

                                          IT IS SO ORDERED

                                             /s/
                                   **Hon. Vanessa L. Bryant**
                                   **United States District Judge**

**Dated at Hartford, Connecticut: June 28, 2022**